UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 13-20866-CR-ROSENBAUM/VALLE

UNITED STATES OF AMERICA

   v.

CARLOS LUNA RAMIREZ,

   Defendant.
_____

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE**

Presently before the Court is Defendant Carlos Luna Ramirez's Motion to Suppress Evidence (the "Motion") (ECF No. 27), which was assigned to the undersigned for a report and recommendation by the Honorable Robin S. Rosenbaum. *See* (ECF No. 28). The undersigned has reviewed the Motion, the United States' Response (ECF No. 35), and held an evidentiary hearing on February 19, 2014. For the reasons discussed below, the undersigned recommends that the Motion to Suppress be **DENIED**.

   I.   **BACKGROUND**

Defendant Carlos Luna Ramirez has been charged in an indictment with one count of possession of child pornography, in violation of Title 18, United States Code, §§ 2252(a)(4)(B) and (b)(2). *See* (ECF No. 6). The alleged child pornography was found on a black IBM desktop computer seized from Luna Ramirez's bedroom pursuant to a valid search warrant. In the instant Motion, Luna Ramirez does not challenge the facial validity of the warrant but asserts that the search violated his Fourth Amendment rights because of changed circumstances encountered during the execution of the warrant. Accordingly, Defendant Luna Ramirez moves the Court for an order suppressing all evidence seized from his bedroom.

**II.     THE SEARCH WARRANT**

At the February 19, 2014 hearing, Timothy Devine, a special agent working for the United States Immigration and Customs Enforcement's Homeland Security Investigations ("ICE–HSI"), testified for the government. Agent Devine stated that he specializes in child exploitation investigations and has twelve years of experience in the field. He explained that through the use of investigative software employed in child exploitation investigations, law enforcement identified the Internet Protocol address ("IP address") of a computer involved in downloading and sharing child pornography. Specifically, Agent Devine testified that a computer utilizing IP address 71.196.15.78 was used to download child pornography through the use of the ARES P2P file-sharing network. Law enforcement was then able to partially download at least 7 linked files containing child pornography that were being shared from the subject IP address using the file-sharing network. Through the issuance of a subpoena to Comcast, law enforcement traced the IP address to a residence located at 1495 NE 180th Street, North Miami Beach, Florida ("the residence").

To support an application for a search warrant of the residence, Agent Devine signed an affidavit stating that there was probable cause to believe that the residence contained "contraband, as well as fruits, instrumentalities, and evidence of the possession, receipt, transportation, and distribution of child pornography," in violation of Title 18, U.S.C. §§ 2252 and 2252(A). (ECF No. 35-1 at ¶ 5). The affidavit further stated as follows:

(i) Subpoena results from Comcast showed that the target IP address was assigned to an individual with the initials J.J. who resides at the residence. *Id.* at ¶ 42.

(ii) Surveillance of the residence revealed that a Chevrolet parked in the driveway was registered to J.J. *Id.* at 47.

    (iii)    Additional database searches revealed that J.J. may be residing at the residence with other persons, including an individual with the initials J.J.P., an individual with the initials J.L.A.C., and an individual with the initials H.B.P. *Id.* at ¶ 48.

    (iv)    In Agent Devine's experience, persons who are involved with child pornography generally also have other sexually explicit materials related to children; maintain these images or videos on cameras, films, computers, and wireless telephones; and often share this information or trade depictions to other like-minded individuals either in person or over the Internet. *Id*. at ¶ 49

    *(v)*    In Agent Devine's experience, individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. *Id.*

The affidavit described the residence to be searched as a "beige single family residence located on the north side of 180th Street and NE 15th Avenue [with a] white front door, an L-shaped cobblestone driveway . . . and a wood fence that surrounds the property." (ECF No. 35-1, Attachment A). Lastly, the affidavit requested authority to "search the entire [residence], including the residential dwelling, any storage unit assigned to that dwelling, and any computers or electronic media found therein." *Id*. at ¶ 5.

    On November 4, 2013, Magistrate Judge Patrick A. White determined that probable cause existed and issued a search warrant for the "residence located at 1495 NE 180th Street, North Miami Beach, Florida." The search warrant permitted the officers to seize any computer, computer system, or wireless telephone from the residence.[1]

---

[1] At the hearing, Defendant did not contest that probable cause existed for Magistrate Judge White to issue the search warrant of the home on November 4, 2013. Similarly, Defendant did not challenge the validity of the search warrant at the previous motion to suppress hearing held before Judge Rosenbaum on December 13, 2013. *See* (ECF No. 22 at 2).

### III. THE SEARCH OF DEFENDANT'S BEDROOM

On November 5, 2013, law enforcement executed the search warrant at 1495 NE 180th Street. At approximately 6:30 AM, Agent Devine knocked on the front door and announced law enforcement's purpose. He was permitted to enter the home by Mr. Juan Jara, Jara's brother (Johnny), and their mother, Ms. Perez. Approximately 16 to 19 agents entered and secured the residence. During the search that followed, the agents located three computers: two in the main home and a third in an efficiency room located in the back of the house but connected to the main structure. Agent Devine testified that one computer was located in the living room, and a second computer was located in a bedroom that was being rented to Defendant Luna Ramirez. The agents searched the computer in Defendant's bedroom and found child pornography in a shared folder under the Defendant's name. The computer in Defendant's bedroom also had access to the ARES P2P file sharing network, and at least two of the pornographic images on the computer matched those downloaded by law enforcement in September 2013 during the investigation of IP address 71.196.15.78.

The agents also conducted a preliminary examination of the desktop computer in the living room, which was located next to the home's internet router. This computer, however, did not contain any evidence of child pornography and did not contain the ARES P2P file sharing network. According to Agent Devine, the agents decided not to conduct a preliminary examination of the computer in the efficiency room because they had already discovered the contraband they were looking for in Defendant Luna Ramirez's bedroom computer.

Agent Devine next testified about the layout of the residence and Defendant's bedroom. The residence had one address, one mailbox, and no individual unit numbers or apartment numbers assigned to rooms inside the residence. The residence also had one common kitchen, living room, and laundry room. During the search, agents learned that Defendant Luna Ramirez

4

had been renting a bedroom from the Jara family. The bedroom he rented did not have separate access to the outside of the property, nor did it have a separate kitchen or bathroom.[2] Agent Devine further testified that he believed that Defendant's bedroom did not have a lock. Agent Devine's testimony is corroborated by pictures and a video taken by the government during the search, both of which were admitted into evidence. Agent Devine stated that Defendant's bedroom was simply a bedroom just like any other bedroom in the house.

## IV.     THE MOTION TO SUPPRESS

Defendant asserts that law enforcement's discovery of Defendant as a renter in the home constituted a material change in the facts underlying the Magistrate's determination of probable cause. Defendant argues that Luna Ramirez's presence as a renter changed the nature of the home from a single-family home to a multi-unit dwelling, and required the government to return to the magistrate to obtain separate warrants for each rented room. *See* (ECF No. 27 at 3). To support this proposition, Defendant primarily relies on the Fifth Circuit Court of Appeals' opinion in *United States v. Perez*, 484 F.3d 735 (5th Cir. 2007). According to Defendant, once law enforcement recognized that Defendant rented a bedroom in the residence, law enforcement was required to go back to the magistrate and obtain a second search warrant. Defendant states that because probable cause no longer existed to search Defendant's rented bedroom, the search violated the Fourth Amendment and the items seized from the bedroom, including the computer containing child pornography, must be suppressed. (ECF No. 27 at 5).

## V.     THE TARGET RESIDENCE WAS A
## SINGLE-FAMILY AND NOT A MULTI-UNIT DWELLING

The Fourth Amendment requires that search warrants be issued only "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and

---

[2] The agents determined that the bedroom with the computer containing the child pornography was rented by Defendant because his Florida identification was found in the bedroom and because Defendant retrieved his clothing from within the bedroom. Defendant needed to retrieve his clothing because he was taking a shower when the agents first entered the home.

5

the persons or things to be seized." U.S. CONST. amend. IV. A description is sufficiently particular "when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982). Failure to adequately enforce the particularity requirement "would undermine the warrant requirement itself, and increase the risk of an excessive intrusion into the areas of personal rights protected by the Fourth Amendment." *Id*. at 1348-49.

The authority to search granted by any warrant is limited to the specific places described in the warrant, and does not extend to additional or different places. *United States v. Ferreras,* 192 F.3d 5, 8 (1st Cir. 1999). However, "search warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided." *Id*. (internal citation omitted). In this regard, warrants authorizing a search of "premises" at a certain address authorize a search of the buildings standing on that land. *See, e.g*., *Ferreras*, 192 F.3d at 8; *United States v. Hinds*, 856 F.2d 438, 441 (1st Cir. 1988); *United States v. Williams*, 687 F.2d 290, 293 (9th Cir. 1982).

In the context of child pornography, "evidence that the user of a computer employing a particular IP address possessed or transmitted child pornography can support a search warrant for the physical premises linked to that address." *United States v. Vosburgh*, 602 F.3d 512, 527 (3d Cir. 2010) (noting that attempts to access child pornography from defendant's IP address established probable cause that evidence of criminal activity would be found in defendant's apartment); *see also United States v. Perrine*, 518 F.3d 1196, 1205-06 (10th Cir. 2008) (upholding probable cause where pornographic images were traced to defendant's residence using IP address); *United States v. Rubinstein*, No. 09-20611-CR, 2010 WL 2723186, at *9 (S.D. Fla. June 24, 2010) (McAliley, Mag. J.) (upholding warrant permitting search of entire residence,

6

even though police had reason to believe that other persons lived in the home, based upon IP address linking defendant to child pornography).

Moreover, "'[a] search warrant for the entire premises of a single-family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence.'" *United States v. Esterline*, 287 F. App'x 693, 699 (10th Cir. 2008) (quoting *United States v. Kyles*, 40 F.3d 519, 523-24 (2d Cir. 1994)); *United States v. Ayers*, 924 F.3d 1468, 1480 (9th Cir. 1991) (determining that search of entire single-family residence, including defendant's bedroom, was authorized by search warrant despite the existence of other occupants within the residence). For example, in *United States v. Grey*, No. 10-20410-CR, 2011 WL 4368843, at *4 (S.D. Fla. May 3, 2011) (Turnoff, Mag. J.), this District upheld a search of an entire single-family residence even though the residence contained an attached efficiency that was separated from the main home by an inner partition. The home was registered to Robert and Loma Graham and agents discovered the defendant when they searched his room in the home and found evidence of narcotics, ammunition, and firearms. *Id*. The court determined there was sufficient probable cause to support the issuance of a search warrant for the entire single-family residence. *Id.* at *6.

In this case, the warrant at issue authorized a search for "the residence located at 1495 NE 180th Street, North Miami Beach, Florida." The list of items to be seized included "[a]ny computer, computer system, electronic media device, [and] wireless telephones. . . ." (ECF No. 35-1 at 37). Based on the information conveyed from Agent Devine to Magistrate Judge White, the search warrant linking IP address 71.196.15.78 to the physical address at 1495 NE 180th Street was supported by probable cause. Moreover, like in *Grey*, the warrant was not overbroad in allowing the agents to search the entire house for electronic devices that might contain child pornography.

7

Defendant, however, likens his situation to that in *Perez*, which announced a general requirement, subject to certain exceptions, that search warrants for multi-unit residences specify the precise unit that is the subject of the search. 484 F.3d at 741. Relying on *Perez*, Defendant argues that law enforcement's discovery that he lived in a rented room in the residence constituted a material change to the facts underlying Magistrate White's determination of probable cause, which required the agents to call off the search and obtain a second warrant for his bedroom. (ECF No. 27 at 2).

In *Perez,* law enforcement searched a multi-unit home, 7608 Scenic Brook Drive, based upon an IP address that had been linked to child pornography. *Id.* at 740. Upon executing the search, law enforcement encountered three discrete units within the subject premises, but continued their search without seeking a second or third search warrant from the magistrate. *Id.* at 741. The court determined, relying on *United States v. Garrison*, 480 U.S. 79 (1987), that because the officers learned that the subject premises had three discrete units, the officers should have suspended the search until a magistrate determined that probable cause continued to exist. *Id*. at 744.[3]

This Court finds, however, that the Jara residence at 1495 NE 180th Street is a single-family residence, and not a multi-unit home. Factors to consider in determining whether a unit is a single-family or multi-unit home include whether the unit is equipped for independent living, has separate access to the outside of the home, separate doorbells, separate mailboxes, and accessibility to the entire home. *See United States v. Kyles*, 40 F.3d 519, 524 (2d Cir. 1994) (upholding search of defendant's locked bedroom to which defendant had the only key, even though defendant was not named in the search warrant application, because the "FBI agents had no reason to believe that [defendant's bedroom] was a separate residence: it had neither its own

---

[3] Although the officers in *Perez* erred by not obtaining an additional search warrant, the court nonetheless upheld the validity of the search because probable cause still existed to search defendant's particular unit despite the existence of the two additional units. *Id*. at 744.

access from the outside, its own doorbell, nor its own mailbox," and the agents had probable cause to believe that the room contained evidence regarding a robbery); *United States v. Hinds*, 856 F.2d 438, 441-42 (determining that search of the top floor of a three-story home was permissible and that the "mere presence" of more than one family in a building did not change its character from single-family to multifamily, especially where the top floor was not separated from the floors below by a door, and was openly accessible to anyone in the house); *Ferreras*, 192 F.3d at 8 (determining that the search of an attic was reasonable and did not require a separate warrant where the attic was open to the second floor and had access to the second floor, and was not equipped for independent living).

Based upon the factors listed in *Kyles*, *Hinds*, and *Ferreras*, Defendant's bedroom was not a separate residence within 1495 NE 180th Street. *Perez* is distinguishable because it involved the search of a multi-unit dwelling, but the instant case concerns a single-unit home. Here, Defendant's unlocked bedroom had no independent kitchen, bathroom, mailbox marking, or unit marking. It also did not have access to the outside of the home without walking through the shared living room or shared hallway. In fact, Defendant was arrested while taking a shower in a bathroom located in the hallway outside of his bedroom.

Defendant's theory that a "material change" occurred when law enforcement discovered that Defendant Luna Ramirez was a renter is refuted by Agent Devine's affidavit, which disclosed to Magistrate White that additional residents were believed to be living in the home. (ECF No. 35-1, at ¶ 48). Thus, the existence of Defendant living in a bedroom in the single-family home did not constitute a material change and did not alter the Magistrate's finding that a search of the home had a fair probability to uncover illegal contraband.

Lastly, even if Defendant's bedroom were considered to be a separate unit—which the Court finds it was not—*Perez* still would not support suppression of the evidence because the

9

search of a multi-unit structure is valid where "the targets of the investigation have access to the entire structure." *Perez*, 484 F.3d at 741 (citing *United States v. Johnson*, 26 F.3d 669, 694 (7th Cir. 1994)). As stated above, Defendant had access throughout the Jara home. Defendant was arrested while taking a shower in a bathroom outside of his bedroom and available to any other resident in the house. Moreover, Defendant would need to walk through the house to go outside as his bedroom had no separate outside access. Thus, the general rule in *Perez* that law enforcement should obtain a separate warrant for a multi-unit dwelling is inapplicable.

In sum, there was probable cause to issue a search warrant for the entire residence at 1495 NE 180th Street and law enforcement did not exceed the scope of the search warrant when it seized the computer located in Defendant's bedroom.

## VI.      AT A MINIMUM, THE EVIDENCE SHOULD NOT BE SUPPRESSED UNDER THE GOOD FAITH EXCEPTION

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court established the good-faith exception to the exclusionary rule. The good faith exception requires suppression "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of the probable cause." *Id.* at 926. Because the purpose of the exclusionary rule is to deter unlawful police misconduct, "when officers engage in objectively reasonable law enforcement activity and have acted in good faith when obtaining a search warrant from a judge or magistrate, the *Leon* good faith exception applies." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (internal quotation omitted). As this Circuit has explained, the *Leon* good faith exception applies in all but four limited sets of circumstances:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319 (1979); (3) where the affidavit supporting the warrant

>is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Id.* at 1313 (internal quotations omitted).

Here, the Court finds the testimony of Agent Devine to be credible and finds no evidence that the officers acted dishonestly or recklessly either in preparing the affidavit or executing the search warrant. Upon questioning by the Court, Defendant's counsel readily conceded that there is no evidence of bad faith on the part of law enforcement in obtaining or executing the search warrant. Moreover, the search warrant was particularized in that it described the property to be searched and included a specific list of items to be seized. Because the Court finds that the agents acted in good faith in executing the warrant, and because none of the four limitations outlined in *Martin* are applicable, the *Leon* good faith exception would apply to this case. As such, although the Court finds that the search of Defendant Luna Ramirez's bedroom was permitted by the search warrant at issue, and that law enforcement did not exceed the scope of the warrant in searching Defendant's room, any misconduct would not result in suppression based upon the *Leon* good faith exception.

## VII.   RECOMMENDATION

Consistent with the foregoing, the undersigned respectfully recommends that Defendant Carlos Luna Ramirez's Motion to Suppress Evidence (ECF No. 27) be **DENIED**.

The parties may serve and file written objections to this Report and Recommendation with the District Judge within fourteen (14) days of being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C). Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court except upon

grounds of plain error or manifest injustice. *See id.*; *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985).

**DONE AND ORDERED** in Chambers in Miami, Florida, on February 25, 2014.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Robin S. Rosenbaum
All Counsel of Record